PHILIP W. DOWNES *vs.* WILLIAM T. LONG and others.

*Construction of Will—Estate for Life—Remainder in Fee—Charge on Land—Power of Court of Equity under sec. 198 of Art. 16 of Code, to Sell land.*

Under a devise to the wife and children of L. now living, and to any other legitimate child or children which may be hereafter born to him, of all of that farm on which he now resides, the wife takes an estate for life, and the children of L. take a vested remainder in fee; and, in case he shall have other legitimate children, the remainder must open for their benefit, so that each one may have an equal share in the property.

Under a devise of a farm to the wife and children of L. subject to the condition that L. shall have the control, direction and management of the farm, and a home thereon during his life, for the support and maintenance of himself, his family, and his children, the condition creates a charge upon the land, and L. and his children, the wife being dead, have equal interests in the net proceeds of the rents, profits, and issues of the farm.

Under section 198 of Article 16 of the Code, empowering Courts of equity, where one or more persons is or are entitled to an estate for life or years, or to an estate tail, fee simple, conditional, base or qualified fee, or any other particular limited or conditional estate in lands, and any person or persons is or are entitled to a remainder or remainders, vested or contingent, or any other interest, vested or contingent, in the same land, to decree a sale of the land, on application of any of the parties in interest, if it shall appear to be advantageous to the parties concerned, and to direct the investment of the proceeds of sale, so as to inure in like manner, as by the original grant to the use of the same parties who would be entitled to the land, a Court of equity has power to decree the sale of a farm devised to the wife and children of L. upon which there is a charge for the support of L. and his family during his life.

The fact that the testator intended that L. should hold the farm during his life for the benefit of himself and his family, does not deprive the Court of the power to decree a sale of

the same, as an attempt to provide against a remedy in the ordinary course of judicial proceedings, and oust the jurisdiction of the Courts is void.

APPEAL from the Circuit Court for Caroline County, in Equity.

This appeal was taken from a decree of the lower Court (ROBINSON, C. J.,) dismissing the bill of complaint. The case is stated in the opinion of this Court.

The cause was argued before BRYAN, PAGE, ROBERTS, McSHERRY, BOYD and BRISCOE, J.

*William S. Bryan, Jr.* (with whom was *George S. Russum,* on the brief,) for the appellant.

No appearance for the appellees.

PAGE, J., delivered the opinion of the Court.

Denwood Long, being seized of land situated in Caroline county, died in 1887, leaving a last will, by which, among other things, he devised as follows: " To the wife and children of my son, William Thomas Long, now living, and to any other legitimate child or children which may be hereafter born to him, all of that farm on which he now resides, known as the 'Home Farm,' subject to this condition, namely: I do hereby devise and direct that my son, William Thomas Long, shall have the control, direction and management annually, one year after another, of said farm, and a home thereon during his life, for the support and maintenance of himself, his family and his children." Mary Long, the wife of Thomas (referred to in this clause), died in 1888, leaving nine children, seven of whom, being of age, have conveyed all their interests in the property to the appellant. The remaining two children are still under

the age of twenty-one years. In the bill, which was filed by the grantee of the interests of seven of the children, and to which Thomas Long and all of his children are made defendants, it is alleged that Thomas Long is "exceedingly improvident and indifferent to the needs of his children; that he expends the entire income of the farm for intoxicating liquors, whilst the infant children are growing up in ignorance, and without the proper necessaries of life; that by his mismanagement, the farm has been denuded of valuable timber; its arable portion, for the want of proper cultivation, is growing up in filth and briars, its orchards destroyed, and inasmuch as it does not produce sufficient crops to pay taxes and keep up the ordinary repairs, it is in imminent danger of being sold for the payment of taxes, and that it will be advantageous to all the parties concerned to have it sold and the proceeds invested," &c. The prayer is for a sale of the property under section 198 of Article 16 of the Code, and such other relief as the case may require.

The testimony in the cause fully supports these allegations. It establishes the facts that the property is not susceptible of partition, and that it would be highly advantageous to all the parties in interest that it should be sold. The only question, therefore, presented by the record is as to the authority of the Court, under the special circumstances of the case, to decree a sale. The first inquiry is, What estate passed under this clause in the will? The words of the testator, while they import a gift to the wife and children, do not determine the proportions in which they are severally to take. The principle upon which this is to be determined is that of carrying out the intention of the testator, provided that can be ascertained, and no rule of law invaded. It is obvious that the testator intended that each one of the children of his son should share equally in the property bestowed by this clause. He desired that the title of the property should remain in the wife of

his son, Thomas, and all the legitimate children of the latter, then living, or that might be thereafter born; that the son should live and have a home upon it, and manage and control it for the common benefit of himself, his wife, and children.

· The words employed in the devise are: " To the wife and children of my son, William Thomas, now living, and to any other legitimate children which may hereafter be born to him." Now a gift to " children " simpliciter, without additional description, means a gift to the children in existence at the death of the testator; provided there be children then in existence to take. *Shotts vs. Poe, Admr.,* 47 *Md.,* 519. But this rule can have no application here, because there are words showing the testator desired that all the children of his son should have an equal interest in the estate. If, therefore, the words children, &c., be taken as words of limitation, and not of purchase, this transparent purpose of the testator, viz., that all the children of his son, by his present or any other wife, should equally share his bounty, could not be carried into effect, because in that case the present wife would take a fee, which, on the event of her death, would descend to her heirs, to the exclusion of such children as Thomas might have by a second wife. Again, by the condition annexed to the devise, the property was to be managed by the· son for the support and maintenance of himself, his family and his children. The word " family " here used is often a word of doubtful import. Here, however, it must be regarded not as a limitation of the estate already granted, but to declare those for whom the trust is to be conducted, viz., for those who composed his son's immediate household, that is, his then, or any future wife, himself and his children. We are of the opinion, therefore, that the words " children of my son William, now living and to any other legitimate child or children which may be hereafter born to him," &c., must be taken as words of purchase and not of limitation, and

that, by a proper construction of the devise, the wife took an estate for life and the children of the son William a vested remainder in fee, and, in case he shall have other legitimate children, the remainder must open for their benefit, so that each one may have an equal share in the property, subject, however, to the condition annexed. This view is fully sustained by a great number of cases applicable. In *Salmon vs. Tidmarsh, 5 Jurist, N. S.,* 1380, Sir J. ROMILLY said: "Under a gift to a wife and her children, if there be nothing to denote the proportions in which the wife and children respectively are to take, then the Court is called on to denote the proportions; and it follows, according to the rule laid down in *Crockett vs. Crockett,* (2 *Phil. C. C.,* 553), that the most natural disposition is, to give the property to the wife for life, and afterwards to her children." *Newill vs. Newill, L. R.* 12 *Eq. Cas.,* 434; *In re Owen's Trusts, L. R.* 12 *Eq. Cas.,* 316; 2 *Jarman on Wills,* 702; 2 *Redfield on Wills,* 422, *note* 46; *Ogle vs. Corthorn,* 9 *Jurist,* 325; *Hague et ux. vs. Hague,* 29 *Atl. Rep.,* 261 (161 *Penn. St.,* 643).

This estate is, however, charged with the following condition, viz.: The testator directs that his son, William Long, "shall have the control, direction and management, annually, one year after another, of said farm, and have a home thereon, during his life, for the support and maintenance of himself, his family and his children." We are of the opinion that by these words the testator intended to do no more than create a charge upon the land. He desired that his son and his family should reside upon the land, and that the son should operate it for the common support of himself and his family. In the case of *Magruder et al. vs. Peter et al.,* 4 *Gill & J.,* 328, the testator declared by his will: "It is my intention that the proceeds of all my estate shall be vested in my dear wife, Sarah Peter, for the maintenance and education of my children"; and it was contended that as a devise of all the profits of lands was a de-

vise of the land itself, that the legal estate vested in her; but the Court held that " if this position is in general correct, it cannot govern this case. A devise of the profits of land does not *ex vi termini* pass the land, but only affords evidence that it was the intention of the testator that it should pass. It cannot therefore apply where a different intention is manifest on the face of the will."

The right to a home on property devised, it is well settled, constitutes a charge on the property. *Tolson vs. Tolson,* 8 *Gill,* 376 ; *Donelly vs. Edelen et al.,* 40 *Md.,* 120 ; *Willett and wife vs. Carroll,* 13 *Md.,* 459.

Mrs. Long is now dead, and it therefore follows from what we have said that while the fee is in the children, now living, of William Long, subject to open to let in such children of his as may hereafter be born, yet during the life of William Long, he, his children and his family (as we have explained the meaning of the word as here used) have an equal interest in the net proceeds of the rents, profits and issues. Is property, so held, within the provisions of the Act of 1868, chapter 273, codified as section 198 of Article 16 of the Code, so that, if it should appear on application of any of the parties in interest, that it will be advantageous to those concerned, it can be sold by the decree of the Court and the proceeds invested? · This provision of the Code is the Act of 1868, ch. 273, which is an amendment of the Act of 1862, ch. 156. The latter Act applied only to cases where estates were held for life or years, and other persons were entitled to a remainder or remainders, vested or contingent, or an executory devise or devises, or any other interest vested or contingent. The Act of 1868, ch. 273, now forming the 198th section of Article 16 of the Code, is in all respects the same, except its provisions are made broad enough in terms to include every kind of particular, limited, or conditional estates, and all descriptions of other estates or interests, vested or contingent, in the same land. Its provisions are as follows: " In all cases

when one or more persons is, or are, entitled to an estate for life or years, or to an estate tail, fee simple, conditional, base or qualified fee, or any other particular, limited or conditional estate in lands, and any person or persons is or are entitled to a remainder or remainders, vested or contingent, or an executory devise or devises, or *any other interest, vested or contingent,* in the same land, on application of any of the parties in interest, a Court of equity may, if all the parties in being are parties to the proceeding, decree a sale or lease thereof, if it shall appear to be advantageous to the parties concerned, and shall direct the investment of the proceeds of sale, or the limitations of the reversion and rent, as the case may be, so as to enure in like manner, as by the original grant, to the use of the same parties who would be entitled to the land, sold or leased, and all such decrees, if all the persons are parties who would be entitled if the contingency had happened at the date of the decree, shall bind all persons whether in being or not who claim or may claim any interest in said land under any of the parties to said decree, or under any person from whom any of the parties to such decree claim, or from, or under, or by the original deed or will by which such particular, limited or conditional estates, with remainders or executory devises, were created." Prior to the passage of the Act of 1862 (*supra*) no statute had been passed conferring jurisdiction upon Courts of equity, to give to a decree, in a case like this, the effect of binding the interests of parties not then in being. Nor did these Courts in Maryland have power to meddle with the property of persons unborn, under any of the general powers of Courts of chancery. *Downin et al. vs. Sprecher,* 35 *Md.,* 474.

In the case just cited, where the rights of the parties arose prior to the Act of 1862, the Court, holding that by the will, the sons of Mrs. Downin, living at the death of the testator, took vested remainders in fee, subject to

open and let in after-born sons, remark: " The interests of the latter could be destroyed neither by the life-tenant nor by their living brothers; their rights derived under the will were indestructible by act of any of the parties having interests prior to or in common with them; and it would be strange, if, in the absence of legislative sanction, the Court could work out a representation for them through these parties collectively, for the purpose of divesting title to land." It was to supply this deficiency in the powers of Courts of equity that the original Act was passed. The purpose of the Legislature in passing it, doubtless, was not only to protect the interests of those immediately concerned in the property, but to subserve a broad public policy, of preventing, as far as possible, such estates, as are contemplated by the Act, from becoming obstructions to the general progress of the community, in consequence of waste and decay, due to the inefficiency or feebleness of those having the temporary use or control of them. And so, by the amendment of 1868, ch. 273, now constituting section 198 of Article 16 of the Code, the benefit of the law was extended to almost every conceivable estate in which unborn children may be interested. " In all cases," the words are, " when one or more persons is or are entitled to an estate for life or years, or to an estate tail, fee simple, &c., * * * or any other particular, limited or conditional estate," and any person is entitled to remainders vested or contingent, * * * or *any other interest,* vested or contingent," &c. This language, in view of what we conceive to be the general policy of the statute, is quite sufficient to include a case such as we are now considering.

It is objected, however, that it is evident from the will that the testator intended that his son, William, should hold the farm during his life for the benefit of himself and his family. But even if this be conceded, we are at a loss to perceive how this can affect the operation of the statute. If the power to decree a sale be within the authority of a

Court of equity, the liability to have such an interference upon a proper case made becomes an incident of the estate itself, which cannot be ignored or annulled, either by contract or grant. A proviso restraining alienation, annexed to a life estate or an estate in fee, is void. *Rochford vs. Hackman,* 16 *Jurist,* 212. And even as to equitable estates, the general rule is the same. *Warner vs. Rice & Knell, Trustees,* 66 *Md.,* 440; and so, an attempt " to provide against a remedy, in the ordinary course of judicial proceedings, and oust the jurisdictions of the Courts," cannot be done. *Guaranty Trust and Safe Deposit Co.' vs. Green Cove Springs and Melrose R. R. Co.,* 139 *U. S.,* 151. Nor can the fact that the son holds a fiduciary relation to the property affect the case. Estates upon which trusts have been fastened are subject to the ordinary incidents of property, 2 *Story's Eq.,* 974, and hence are to be subjected to the provisions of all statutes applicable, as other estates. In *Shreve and wife vs. Shreve et al.,* 43 *Md.,* 403, though the two daughters held only an equitable estate, the Court were of the opinion that a case could be made for a sale, under the Act of 1862, ch. 156. So in *Krone vs. Tinville,* 31 *Md.,* 141. In *Druid Park Heights Co. vs. Oettinger,* 53 *Md.,* 63, this Court said: " Under our statute, 1868, chapter 273 (sec. 198 of Art. 16), Courts of equity, with all the parties before them, who are interested, may decree the sale of any kind of an estate."

If the property shall be sold under a decree of the Court, the proceeds must remain in trust, and be invested, so as to inure in like manner as by the will, to the use of the parties who would be entitled to the land. And inasmuch as William Long and each of his children are entitled to a home and a support, as far as the profits of the farm will allow, the income of the proceeds of sale must be paid during his life, in equal proportions to him and each of his children, or their assignees, respectively, and at his death be distributed

equally among such of his legitimate children (or their assignees) as then may be living. From what we have said, it follows the decree appealed from must be reversed, and the cause remanded for a new decree in accordance with the principles of this opinion.

*Decree reversed, and*
*cause remanded.*

(Decided 20th June, 1894.)